**Jim BROOKS, Appellant,**

v.

**CITY OF SUGAR CREEK, et al., Respondent.**

**No. WD 71855.**

Missouri Court of Appeals, Western District.

March 22, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 2011.

Application for Transfer Denied June 28, 2011.

Rodney A. Ames, Liberty, MO, for appellant.

Robert O. Jester and Matthew J. Gist, Kansas City, MO, for respondent.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, GARY D. WITT, Judge and ZEL M. FISCHER, Special Judge.

GARY D. WITT, Judge.

Jim Brooks filed suit against the City of Sugar Creek, Herbert Soule, and Jonathan Fields, as it pertained to his alleged wrongful discharge from his position as a police officer for the City. After the City moved for summary judgment, the trial court granted its motion and then subsequently also granted Soule and Fields's motion to dismiss. For the reasons explained herein, we affirm.

## Factual Background

On December 22, 2008, Brooks filed his wrongful discharge and wrongful termination petition in the Circuit Court of Jackson County. As amended, Brooks's Petition alleged that on March 25, 2008, he had been employed as a police officer with the City for almost a year. On that evening, Brooks was on patrol in his squad car when he stopped a vehicle for running a red light. After questioning the driver,[1] Brooks "determined that the operator of the vehicle had been drinking alcohol" because the "suspect failed the field sobriety tests."

Brooks placed this individual under arrest, and then transported the suspect to the City's police headquarters. The suspect subsequently refused a breathalyzer test, and then made threats to Brooks that she had a "close relationship with the Police Department of the City of Sugar Creek" and that "she could arrange to have the Plaintiff terminated by the Police Department."

Sergeant Jonathan Fields, who was Brooks's superior in the Police Department, was informed by Brooks that he had arrested this specific suspect. Fields responded by saying, "Do you know who you have in there?" and "Fields then informed Plaintiff that the suspect was the owner of a well known business in Sugar Creek and was then instructed by his superior to 'Make it go away!'" Fields further instructed Brooks "to shred all records relating to the detention, field testing, and

---

1. The parties have not provided a name for this individual he pulled over and subsequent-ly arrested.

arrest of the suspect" and Brooks "complied with this directive from his superior officer and shredded the file."

On the next day, Brooks "was summoned to Police Headquarters by the Police Chief," Herbert Soule. "Upon arriving in the Chief's office, the Plaintiff was informed that he was terminated effective immediately."

On May 1, 2009, the City filed its Motion for Summary Judgment on the basis that Brooks's wrongful discharge and wrongful termination claims were barred, as a matter of law, by the doctrine of sovereign immunity. On September 22, 2009, the circuit court issued its Judgment granting Defendant City of Sugar Creek's Motion for Summary Judgment.

Soule and Fields also filed a motion to dismiss Brooks's Petition on the basis that, as a matter of law, Brooks could not bring his wrongful discharge and wrongful termination claims against them because they are individuals and not his employer. On October 29, 2009, the trial court entered its Judgment granting Soule and Fields's Motion to Dismiss.

Brooks now appeals.

## Analysis

In Point One, Brooks alleges that the trial court erred in granting summary judgment over his claims, as it pertained to the City, "because the actions of the City through its agents are not protected acts under sovereign immunity in that sovereign immunity is only intended to protect actions that benefit the general public so as to be deemed a governmental function." Here, the trial court granted the City's motion for summary judgment, as it pertained to the City, based on its conclusion that "the doctrine of sovereign immu-

nity bars common law claims for wrongful termination and/or wrongful discharge."

Our applicable standard of review was outlined by the Missouri Supreme Court in *Daugherty v. City of Maryland Heights*:

Appellate review of summary judgment is *de novo*. Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. A "genuine issue" that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential facts and the "genuine issue" is real, not merely argumentative, imaginary, or frivolous. This Court reviews the record in the light most favorable to the party against whom judgment was entered. The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment.

231 S.W.3d 814, 818 (Mo. banc 2007) (citations omitted).

A municipality has sovereign immunity from actions at common law tort "for those actions they undertake as a part of the municipality's governmental functions-actions benefiting the general public." *Kunzie v. City of Olivette*, 184 S.W.3d 570, 574 (Mo. banc 2006) (internal quotation marks omitted). However, "[m]unicipalities have no immunity for torts while performing proprietary functions-actions benefiting or profiting the municipality in its corporate capacity." *Id.* The Missouri Supreme Court has repeatedly "held that termination of a city employee is a governmental function" and that, therefore, "the city is protected by governmental immunity unless some ex-

ception applies." *Id.*[2]

■ Here, Brooks argues that, based on his well-pled allegations, which we must take as true for the purpose of this appeal, public policy prevents the City from enjoying sovereign immunity from his wrongful termination lawsuit in that "logic cannot support a doctrine that terminating a police officer for arresting a drunk driver because that drunken driver is [a] personal friend of the police supervisors or chief of police is in anyway a benefit to the general public." This Court recently addressed, and ultimately rejected, a similar issue in *Bennartz v. City of Columbia* in which we held the following:

> [C]laims of wrongful discharge and constructive discharge have consistently been found to be barred by sovereign immunity.... Bennartz argues that his constructive discharge for whistleblowing is not barred by sovereign immunity because the improper conduct of his supervisors could not possibly be "in furtherance of the common good." But employee misconduct, no matter how egregious, does not render actions that are otherwise governmental, proprietary. Case law is replete with appellate decisions dismissing or summarily disposing of claims based on alleged misconduct by municipal employees, even though in such cases all facts alleged by the plaintiff are assumed to be true. If Bennartz's assertion were correct, no actionable conduct of any kind could ever

fall within the protection of sovereign immunity. Bennartz cites no authority supporting his position. In fact, an examination of the common law leads to the opposite result, for sovereign immunity shields municipalities from liability even from intentional torts.

> A review of Missouri constructive discharge cases where a municipality is the employer also leads to the conclusion that the bad conduct of supervisors or coworkers causing a plaintiff employee to resign does not turn a municipality's governmental functions into proprietary ones....

> ....

> The conduct of Bennartz's coworkers and his supervisor's acquiescence in the situation, although reprehensible, similarly do not change the governmental function of operating and managing a municipal department, into a proprietary one. Negligent performance of a public function, even grossly negligent performance, does not make a governmental function proprietary. In many of the whistleblower cases cited above, the plaintiffs' supervisors knew about the alleged bad acts and either failed to correct them or affirmatively punished the plaintiffs for complaining.

300 S.W.3d at 260–62 (citations and internal quotation marks omitted).

Brooks expressly acknowledges our recent holding in *Bennartz* that disposes of his claim on appeal. Yet he cites to a

---

2. "A municipality has sovereign immunity from actions at common law tort in all but four cases: (1) where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment (section 537.600.1(1)); (2) where the injury is caused by the dangerous condition of the municipality's property (section 537.600.1(2)); (3) where the injury is caused by the municipality performing a proprietary function as opposed to a governmental func-

tion; and (4) to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy (section 537.610)." *Bennartz v. City of Columbia*, 300 S.W.3d 251, 259 (Mo.App. W.D.2009) (citation omitted). We focus on the only other applicable exception, "the municipality's procurement of liability insurance," in Brooks's second Point Relied On.

concurring opinion in that very case that expressly found that "[g]iven the current status of the law on municipal sovereign immunity, the result reached today is correct" because "we are bound by that precedent." *Id.* at 262–63, 264 (Pfeiffer, J., concurring). We do not dispute Brooks's contention on appeal that a strong policy argument can be made for a different outcome when exceptional circumstances are alleged, like the facts pled in the instant lawsuit. However, we reject this policy argument today for the same reasons we rejected them in *Bennartz:*

> Despite this finding, we are sympathetic to and understand the precarious position that well-intentioned and law-abiding municipal employees may face in cases involving whistle-blower retaliation ... Because of the sovereign immunity protection afforded to municipalities, municipal employees find themselves in a precarious and threatening situation, which creates a very real potential for abuse by municipal governments. Municipal employees who have genuine concerns about the legality and propriety of their employer's acts know that, if they report the alleged wrongdoings, they risk losing their jobs and have no recourse. They are "second-class" employees with fewer rights and protections than employees in the private sector.

*Id.* at 262 (citations omitted). "Our legislature has apparently found that this unfair burden on municipal employees is offset by the protection offered the public purse by protecting cities from bearing the cost of defending suits under the common law." *Id.*

Accordingly, since the General Assembly has not acted upon our invitation to review this area of the law, (maybe the outrageous facts of this case where a policeman was allegedly fired for arresting the friend of his supervisor for driving while intoxicated will get the General Assembly's attention) we cannot conclude that the trial court erred in granting the City's summary judgment motion based on the doctrine of sovereign immunity.

In addition, because transfer was not sought in *Bennartz,* the Missouri Supreme Court did not have an opportunity to consider the issues addressed in that case. Therefore we wish to reiterate concerns expressed therein:

> Municipalities have immunity for actions undertaken as part of the municipal government's "governmental functions-actions *benefiting the general public.*" *Junior Coll. Dist. of St. Louis,* 149 S.W.3d at 447 (emphasis added). The Missouri Supreme Court has concluded that the "termination" of a city employee is a "governmental function." *State ex rel. Gallagher v. Kansas City,* 319 Mo. 705, 7 S.W.2d 357 (1928); *see also Kunzie v. City of Olivette,* 184 S.W.3d 570, 574 (Mo. banc 2006) ("Personnel decisions ... are governmental").

>       \*      \*      \*

> The fact pattern of this case begs the question: How can intentional misconduct by a municipality in exercising personnel decisions ever be deemed an "action[ ] benefiting the general public," such that this intentional misconduct should be deemed a "governmental function" entitled to immunity?

*Bennartz,* 300 S.W.3d at 263–64 (Pfeiffer, J., concurring) (emphasis omitted).

■ Traditionally, governmental entities enjoy sovereign immunity for conduct that is undertaken in furtherance of their "governmental functions." *Junior Coll. Dist. of St. Louis v. City of St. Louis,* 149 S.W.3d 442, 447 (Mo. banc 2004); *see also State ex rel. Gallagher v. Kansas City,* 319 Mo. 705, 7 S.W.2d 357 (Mo. banc 1928).

Certainly, the protection of the public through the exercise of police powers is a legitimate governmental function. *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 242 (Mo.App. E.D.2007). In the case at bar, if Brooks is able to prove his allegations at trial, (that he did his job by arresting an intoxicated driver, but was terminated from his employment solely because the intoxicated driver was a friend of the Police Chief), it becomes very difficult to argue that the City or Brooks's supervisor's were engaging in a governmental function. In fact, the alleged conduct, if true, would be in direct contravention of the City's legitimate governmental function.[3] As such, this case presents important issues on which guidance from our Supreme Court would be helpful.

That being said, we must reject Brooks's argument on appeal because in determining whether his Point Relied On should be granted we are constrained to the current state of Missouri law as reflected in *Bennartz*.

For the aforementioned reasons, Point One is denied.

■ In Point Two, Brooks argues in the alternative that the trial court erred in granting summary judgment over his claims as it pertained to the City "because Defendant did not establish its right to sovereign immunity in this case in that there remains significant factual issues to be determined regarding the existence and extent of defendant's insurance coverage." We disagree.

■ As previously mentioned in Point One, "when a public entity purchases liability insurance for tort claims, sovereign immunity is waived to the extent of and for the specific purposes of the insurance purchased." *Gregg v. City of Kansas City*, 272 S.W.3d 353, 358 (Mo.App. W.D.2008) (internal quotation marks omitted). However, "[a] public entity does not waive its sovereign immunity by maintaining an insurance policy where that policy includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity." *Langley v. Curators of Univ. of Mo.*, 73 S.W.3d 808, 811 (Mo.App. W.D. 2002) (citing *State ex rel. Bd. of Trustees v. Russell*, 843 S.W.2d 353, 360 (Mo. banc 1992)).

In granting the City's motion for summary judgment, the trial court made the following findings and conclusions:

> In this case, Sugar Creek has obtained insurance through MARCIT. The City put its policy with MARCIT into the record. Section 1.08 of the City's insurance policy reads as follows:

> "This Coverage Document or any amendment to it is not intended to, nor does it waive, nor shall it be construed as waiving in any way whatsoever, any sovereign immunity or official immunity provided to the Member entities or their officials, officers or employees by the Constitution of the State of Missouri or by any federal, state, or local law, ordinance or custom. The terms 'sovereign immunity' and 'official immunity' shall be given the broadest interpretation allowed by law."

---

**3.** Unfortunately, the facts of this case do not address an isolated situation. *See Grimes v. City of Tarkio*, 246 S.W.3d 533 (Mo.App. W.D. 2008) (summary judgment upheld against Chief of Police who alleged he was terminated for filing a complaint against the Mayor for the Mayor's interference in the police department's investigation of serious crimes against a friend of the Mayor); and *Wright v. City of Salisbury*, 656 F.Supp.2d 1013, 1031 (E.D.Mo.2009) (summary judgment based on sovereign immunity granted against city police officer who alleged he was wrongly terminated after complaining that he was instructed not to make drunk driving arrests).

This Court finds that the language contained in section 1.08 of its policy with MARCIT does not waive Sugar Creek's sovereign immunity as a public entity retains its full sovereign immunity when the insurance policy contains a disclaimer stating that the entity's procurement of the policy was not meant to constitute a waiver of sovereign immunity.

We find no flaw in the trial court's analysis because the Missouri Supreme Court has repeatedly opined that to hold to the contrary would force government entities "to choose between purchasing insurance and waiving sovereign immunity for all claims on the one hand or not purchasing insurance and being immune except for claims relating to dangerous conditions of property or the operation of motor vehicles on the other, a 'catch–22' situation and frustration of legislative intent." *State ex rel. Cass Med. Ctr. v. Mason,* 796 S.W.2d 621, 624 (Mo. banc 1990).

▪ In attacking the trial court's ruling, Brooks contends that he was given an insufficient opportunity to conduct discovery regarding the issue of the City's insurance prior to the trial court's ruling on the motion for summary judgment. " 'When faced with a motion for summary judgment asserting that a claimant cannot prove all the essential elements of the cause of action asserted, the motion can only be sustained after the claimant is entitled to a reasonable period of discovery.' " *Adams v. USAA Cas. Ins. Co.,* 317 S.W.3d 66, 75 (Mo.App. E.D.2010) (quoting *Eastwood v. N. Cent. Mo. Drug Task Force,* 15 S.W.3d 65, 70 (Mo.App. W.D. 2000)).

Rule 74.04(f)[4] allows the trial court to postpone any ruling on a pending summary judgment motion to accommodate further discovery if counsel follows the Rule's requirements:

Should it appear from the affidavits of a party opposing the motion that for reasons stated in the affidavits facts essential to justify opposition to the motion cannot be presented in the affidavits, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"A party seeking a continuance must file an affidavit supporting its motion and must specify what additional evidence supporting the existence of a factual dispute the movant would have presented to the court if the court had continued the hearing." *Adams v. City of Manchester,* 242 S.W.3d 418, 427 (Mo.App. E.D.2007) (internal quotation marks omitted). "The affidavit must do more than allege further discovery might provide the necessary evidence; rather, it must describe the evidence." *Id.*

▪ The trial court has discretion to grant or deny additional time to conduct discovery before ruling on a pending summary judgment motion. *Chouteau Auto Mart, Inc. v. First Bank of Mo.,* 91 S.W.3d 655, 659 (Mo.App. W.D.2002). "Absent a showing that additional discovery would have shown the existence of any genuine issue of material fact, a trial court does not err or abuse its discretion in refusing a request for a continuance to permit discovery prior to ruling on a summary judgment motion." *Id.* at 660 (internal quotation marks omitted) ("The Bank's affidavit did not meet this requirement. The affidavit merely stated the Bank's desire to depose Ms. Thompson; it failed to set

---

4. All rule citations are to Missouri Supreme Court Rules (2010), unless otherwise indicated.

forth any facts-disputed or otherwise-that it might glean from her deposition.").

In this case, Brooks did *not* file a motion for continuance for further discovery pursuant to Rule 74.04(f), nor did he submit an affidavit specifying what evidence he sought to obtain through further discovery. Rather, in responding to the City's motion for summary judgment, Brooks requested instead "that the Court *deny* Defendant's Motion and allow discovery to be completed, including discovery regarding the alleged insurance that the City has purchased and its coverage of such claims ... and justice would require verification whether such insurance does or does not in fact exist." (Emphasis added.)

But Brooks cites no authority for the proposition that in this situation that the failure to conduct discovery regarding this matter was a basis to *deny* the City's motion for summary judgment, as opposed to allowing Brooks a short continuance to conduct appropriate discovery prior to ruling on the motion for summary judgment. Brooks did not request such a continuance via an affidavit under Rule 74.04(f).

Furthermore, we fail to understand why Brooks had not already conducted discovery on this specific issue of insurance by the time the City filed its motion for summary judgment on May 1, 2009. Had Brooks not been aware prior to filing suit in December of 2008 that the defense of sovereign immunity would have been as-

serted by the City, any doubts should have been resolved when the City expressly asserted sovereign immunity in its motion to dismiss and subsequently as an affirmative defense in its Answer to his Petition. Not even the filing of the City's motion for summary judgment persuaded Brooks to *actually* conduct discovery in this regard, which is significant because the trial court did not grant the City's motion until almost five months after it was filed during which time Brooks filed *two motions for extension of time to respond to summary judgment*. Both of these motions were granted by the trial court, and Brooks was given until July 24, 2009, to respond, therefore giving him *ample time and opportunity to conduct discovery on these very issues* prior to responding to the City's motion for summary judgment.

Notwithstanding these two continuances previously given by the trial court, Brooks still failed to file his response in a timely fashion and instead waited until August 4, 2009, to do so (which was over three months after the City filed its motion for summary judgment). Accordingly, we find it surprising that Brooks claims on appeal that the trial court abused its discretion in this regard because the "Plaintiff should have been permitted more time to conduct discovery."

For all of these reasons, we deny Brooks's second Point.[5]

---

**5.** It is worth noting that Brooks raises new and distinct issues on appeal that he claims he wished to explore during discovery regarding the Policy *that he did not raise in his response to the City's motion for summary judgment*. "Generally, we are confined to addressing only those issues properly raised in the motion for summary judgment and the responses thereto." *Fields v. Millsap & Singer, P.C.*, 295 S.W.3d 567, 571 (Mo.App. W.D. 2009).

Rather, Brooks raised these issues for the first time in a pleading that he denominated

his "Amended Response" to the Summary Judgment. Brooks cites no authority for the proposition that he was entitled to file such an amended response without leave of court, especially since this pleading was even tardier than his original response to the summary judgment motion. Finally, as previously mentioned, Brooks's arguments were not raised before the trial court as required by Rule 74.04(f).

Even were we to reach the merits of these issues not properly raised before the trial court, Brooks has failed to demonstrate that

Finally, in Point Three Brooks argues that the "trial court erred in granting defendants Herbert Soule and Jonathan Fields's preliminary motions to dismiss because plaintiff alleged submissible claims against Defendants Soule and Fields in that those defendants may be held liable for their own wrongful conduct undertaken in conjunction with the tort of wrongful termination in violation of public policy."

"An appellate court reviews a trial court's grant of a motion to dismiss *de novo*." *City of Lake Saint Louis v. City of O'Fallon,* 324 S.W.3d 756, 759 (Mo. banc 2010). "It will consider only the grounds raised in the motion to dismiss in reviewing the propriety of the trial court's dismissal of a petition, and, in so doing, it will not consider matters outside the pleadings." *Id.* "When this Court reviews the dismissal of a petition for failure to state a claim, the facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiffs." *Lynch v. Lynch,* 260 S.W.3d 834, 836 (Mo. banc 2008). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Id.*

In his First Amended Petition, Brooks also sued Herbert Soule (Chief of Police) and Jonathan Fields (Sergeant) for wrongful termination and wrongful discharge.[6]

In granting the individuals' motion to dismiss Brooks's Petition, the trial court found "that individuals cannot be held liable in employment cases unless such a claim is expressly authorized by statute" and that "[t]here is no statutory authority authorizing suit against the individual persons who did not 'employ' the Plaintiff."

Here, Brooks made no allegation in his First Amended Petition that either Soule or Fields employed Brooks, and thus the question becomes whether Brooks may maintain a wrongful termination/discharge claim against either individual defendant. In granting the motion to dismiss, the trial court found "that there is no case law in the State of Missouri indicating that public employees and/or officials are 'employers' for purposes of a common law wrongful termination/discharge claim," and that "[o]ther jurisdictions have held that there is no individual liability in a common law wrongful termination claim."

Recent Missouri Supreme Court case law has given specific contours to the applicable scope of the tort of wrongful discharge. Brooks alleged in his Petition that he was an at-will employee of the City, and thus he was free to be terminated by the City "for any reason or for no reason." *Margiotta v. Christian Hosp. Ne. Nw.,* 315 S.W.3d 342, 345 (Mo. banc 2010) (citations omitted and internal quota-

any one of these issues entitles him to relief on appeal. To mention just one example, Brooks argues that the "Policy Document itself states that it is not the final arbiter regarding the nature, scope, and intent of the coverage provided under the policy described therein but rather that it only 'generally' describes as much." But Brooks fails to cite to any authority whatsoever that supports the proposition that such a clause in an insurance policy can be construed as waiving sovereign immunity when the policy in question clearly and unambiguously states that the policy shall not "be construed as waiving in any way whatsoever, any sovereign immunity," or how

any further discovery could have developed a disputed factual issue in this regard sufficient to preclude summary judgment.

6. While he brings separate wrongful termination and wrongful discharge claims in his lawsuit, Brooks has failed to demonstrate that there is a distinction between these two claims that requires this Court to separately analyze them in this Point. Accordingly, we will discuss these two claims collectively because, as will be outlined below, the Missouri Supreme Court has recently used these terms interchangeably.

tion marks omitted). "However, the at-will doctrine is limited in certain respects," including "the public-policy exception to the at-will-employment rule." *Id.* at 346.

"[T]his Court expressly adopts the following as the public-policy exception to the at-will employment doctrine: An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." *Fleshner v. Pepose Vision Inst., P.C.,* 304 S.W.3d 81, 92 (Mo. banc 2010). "If an employer terminates an employee for either reason, then the employee has a cause of action in tort for wrongful discharge based on the public-policy exception." *Id.*

Here, Brooks alleges that he was terminated by the individual defendants for refusing to violate public policy. "The public policy exception to the at-will employment rule, often called the wrongful discharge doctrine, *is very narrowly drawn.*" *Margiotta,* 315 S.W.3d at 346 (emphasis added). "An at-will employee may not be terminated for refusing to perform an illegal act or reporting wrongdoing or violations of law to superiors or third parties." *Id.*

Brooks points this Court to no case law in Missouri that holds that he may maintain his wrongful termination lawsuit against his superiors. Instead, Brooks relies almost exclusively on foreign case law to support his contention that the trial court erred in granting the individual defendants' motion to dismiss.

The sole Missouri case which Brooks cites to support his position on appeal is *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859 (Mo.App. W.D.1985). In *Boyle,* this Court first "recognized the public-policy exception to the at-will-employment rule." *Fleshner,* 304 S.W.3d at 91. In Boyle, plaintiff was an employee of an optical manufacturing company that did not conduct all of the tests on the eyewear mandated by the Food and Drug Administration to ensure lens safety. 700 S.W.2d at 861. Plaintiff reported these violations to the FDA, and subsequently she was discharged from her employment. *Id.* at 861–62. Plaintiff then filed her wrongful discharge lawsuit against Vista Eyewear and David Baker (who was "president and part-owner of Vista"). *Id.*

In *Boyle,* we recognized the theory of the public policy exception to the at-will employment rule and held that plaintiff "has stated a cause of action for wrongful discharge against the *defendants* in alleging that they fired her for threatening to report their activities and practices." *Id.* at 878 (emphasis added). On appeal, Brooks relies heavily on the fact that in *Boyle* this Court stated in the conclusion that plaintiff could maintain her lawsuit against the *"defendants."* "Statements . . . are obiter dicta [if] they [are] not essential to the court's decision of the issue before it." *Richardson v. QuikTrip Corp.,* 81 S.W.3d 54, 59 (Mo.App. W.D.2002) (internal quotation marks omitted). The issue addressed in *Boyle* was whether under any circumstances there was a public policy exception to the employment-at-will doctrine, and thus this Court did not have occasion to determine today's disputed issue of whether defendants may be sued in their individual capacity in a wrongful discharge claim.

Today, we need not definitively resolve the legal issue of whether a plaintiff may bring a wrongful discharge claim against individual defendants other than the company or agency that employs the

plaintiff. This is because Brooks has never asserted in this litigation that an employee-employer relationship existed between himself and the individual defendants he wished to sue for wrongful termination. Rather, Brooks only alleged that he "was an at will employee of Defendant City of Sugar Creek." A "wrongful discharge cause of action requires an employer/employee relationship." *Maritz Holdings, Inc. v. Fed. Ins. Co.*, 298 S.W.3d 92, 101 (Mo.App. E.D. 2009). "Because an employer/employee relationship was not established, the trial court did not err in entering summary judgment in favor of Respondents on Mr. Chandler's wrongful termination claim." *Chandler v. Allen*, 108 S.W.3d 756, 764 (Mo.App. W.D.2003). "Missouri law allows a former employee to maintain a public-policy wrongful discharge cause of action only against a former employer." *Taylor v. St. Louis Cnty. Bd. of Election Comm'rs*, 625 F.3d 1025, 1027 (8th Cir. 2010) ("Even if Taylor had presented evidence that the Commissioners exercised some degree of control or supervision of her daily activities in their individual capacities ..., courts interpreting Missouri law have also refused to consider individuals who merely supervise an employee as employers for the purpose of wrongful-discharge claims." (*Taylor*, 625 F.3d at 1029 n. 3))

Brooks argues "that there is no reason, as yet articulated by a Missouri Court, why individuals who assisted in and perpetuated this tort cannot be named as co-defendants under this cause, as could joint tortfeasors in other tort actions." We disagree. Missouri case law holds that to be liable in an action for wrongful discharge, an employee-employer relationship must exist between plaintiff and each named defendant, unless there is statutory authority establishing individual liability.

*See Hill v. Ford Motor Co.*, 277 S.W.3d 659, 669 (Mo. banc 2009).

For all of these reasons, Point Three is denied.

## Conclusion

The judgment of the circuit court is hereby affirmed.

All concur.