

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| YURIY MATYSYUK, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD82414 |
| | ) | |
| VIKTOR PANTYUKHIN and | ) | FILED: February 25, 2020 |
| LYUBOV PANTYUKHIN, | ) | |
| Respondents. | ) | |

### Appeal from the Circuit Court of Pettis County
### The Honorable Robert L. Koffman, Judge

### Before Division Three: Lisa White Hardwick, P.J., and
### Alok Ahuja and Anthony Rex Gabbert, JJ.

Yuriy Matysyuk was injured in an automobile accident while riding as a passenger in a vehicle driven by Igor Pantyukhin.[1] The vehicle was owned by Igor's father. Matysyuk sued Igor's parents, Viktor and Lyubov Pantyukhin (collectively, the "Pantyukhins") in the Circuit Court of Pettis County, alleging that they had negligently entrusted the accident vehicle to their son. The circuit court granted the Pantyukhins' motion for summary judgment. It found that the uncontroverted facts failed to establish that Igor was incompetent to drive due to habitual recklessness, and that Matysyuk would therefore not be able to prove an essential element of his negligent entrustment claim. Matysyuk appeals. He argues that the circuit court should have stayed proceedings on the Pantyukhins' summary judgment motion to permit him to conduct further discovery, and that a genuine

---

[1] To distinguish him from his parents, we refer to Igor Pantyukhin by his first name in this opinion. No familiarity or disrespect is intended.

issue of material fact existed regarding whether Igor was incompetent to drive. We affirm.

## Factual Background

On October 7, 2014, Igor was driving Matysyuk, his co-employee, to the jobsite of a pipeline project in Muskingum County in central Ohio, on which they were both working for their employer, ProEnergy Services. Igor was driving a 1999 Honda Accord owned by his father Viktor Pantyukhin. On the way to the jobsite, Igor drove off the right side of the roadway while attempting to negotiate a left-hand curve. The vehicle struck a tree. Matysyuk was seriously injured in the accident, was hospitalized for several weeks, and incurred medical expenses exceeding $400,000. Igor was issued a citation for failure to control his vehicle. He pleaded guilty to the offense, and was assessed fines and court costs totaling $120.

Igor was twenty years old at the time of the 2014 accident. He was residing at home in Sedalia with his parents, the Pantyukhins, at the time.

Igor had been involved in a prior car accident in September 2011, when he was seventeen years old, and three years prior to the accident involving Matysyuk. In the 2011 incident, Igor failed to stop at a stop sign and collided with another vehicle which was traveling on a cross-street. The driver of the other vehicle and two passengers in Igor's vehicle were injured. Igor was driving a 2000 Suzuki Swift owned by Viktor Pantyukhin in the 2011 accident. In connection with the 2011 accident, Igor was cited for failure to yield, and for failing to properly secure a minor passenger.

Igor had one other motor-vehicle-related citation prior to the 2014 accident involving Matysyuk. In June 2012, Igor pleaded guilty to failing to wear a seatbelt and for failing to secure two minor children in seatbelts.

On September 26, 2014, Igor was listed as an "Excluded Driver" in the automobile insurance policy purchased by the Pantyukhins to insure the 1999

2

Honda Accord. Although Matysyuk's Brief contends that Igor was excluded from the policy because he had become "too costly to insure" and was "an unreasonable risk," nothing in the record suggests any reason for Igor's exclusion from the Pantyukhins' automobile insurance policy. There is also no support in the record for the assertion (made for the first time in the "Conclusion" of Matysyuk's Brief) that the Pantyukhins' were "told by the insurance agent not to let [Igor] drive their cars."

On September 12, 2016, Matysyuk filed a Petition against Igor, their joint employer, and the Pantyukhins. The petition alleged that the Pantyukhins negligently entrusted their 1999 Honda to Igor, when he was incompetent to drive it due to his habitual recklessness. The Petition also alleged a claim against the Pantyukhins for negligent supervision, although that claim is not at issue in this appeal.

On March 9, 2017, the Pantyukhins moved for summary judgment. They argued that Matysyuk could not establish a necessary element of his negligent entrustment claim: that Igor was incompetent to drive by reason of habitual recklessness.

On April 10, 2017, Matysyuk filed his response to the Pantyukhins' motion. Matysyuk responded to the Pantyukhins' statement of uncontroverted material facts, and alleged additional purportedly material facts. Matysyuk argued that there was a genuine issue of material fact whether Igor was a habitually reckless driver based on his 2011 accident, his 2012 citations, and his exclusion from the Pantyukhins' automobile insurance policy. Matysyuk's response did not contend that the Pantyukhins' summary judgment motion was premature because he had propounded written discovery to which the Pantyukhins had not yet responded, or because he desired to take their depositions, or the depositions of other witnesses.

3

On April 24, 2017, the Pantyukhins filed a reply memorandum in support of their summary judgment motion, which responded to Matysyuk's statement of additional facts.

Matysyuk filed a motion to strike some of the Pantyukhins' responses to his statement of additional material facts; he also moved for leave to file a sur-reply memorandum. Once again, Matysyuk did not assert that proceedings on the Pantyukhins' motion should be stayed to permit him to conduct additional discovery.

On May 18, 2017, the Pantyukhins noticed their summary judgment motion for hearing on July 17, 2017. At the conclusion of the July 17 hearing, the circuit court took the matter under advisement.

After the hearing concluded, Matysyuk filed a motion to stay proceedings on the Pantyukhins' motion for summary judgment pending further discovery. In his motion, Matysyuk noted that the circuit court had asked during the July 17 hearing "why proceedings on the Motion for Summary Judgment had not been stayed." Matysyuk noted that besides his first round of interrogatories, no other discovery had been conducted between the parties. He requested that, before the court ruled on the summary judgment motion, he be permitted to depose the Pantyukhins, Igor, and the Pantyukhins' insurance agent to learn why Igor was excluded from the Pantyukhins' automobile insurance policy.

After conducting a further hearing, the circuit court denied Matysyuk's motion for stay on July 20, 2017.

On August 2, 2017, the circuit court granted the Pantyukhins' motion for summary judgment. In its judgment, the circuit court stated that the record showed that "Igor has had one accident prior to the fateful one in the present case." The court found that "[t]his [one accident] is not sufficient to establish habitual recklessness," as required to support a negligent entrustment claim against his

4

parents.  The judgment also found (in a ruling not challenged here) that the Pantyukhins were entitled to summary judgment on Matysyuk's negligent supervision claim.

Matysyuk later voluntarily dismissed his claims against Igor, and against their employer, with prejudice.  Matysyuk then filed this appeal.

## Analysis

### I.

We examine Matysyuk's Points in reverse order.  In his second Point, Matysyuk argues that the circuit court erred in denying his motion to stay proceedings on the Pantyukhins' motion for summary judgment.

"The trial court has discretion to grant or deny additional time to conduct discovery before ruling on a pending summary judgment motion." *Brooks v. City of Sugar Creek*, 340 S.W.3d 201, 209 (Mo. App. W.D. 2011) (citation omitted).  "A trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Holm v. Wells Fargo Home Mortg., Inc.*, 514 S.W.3d 590, 596 (Mo. 2017) (citation and internal quotation marks omitted).

Under Rule 74.04(b), a party defending a claim may move for summary judgment "[a]t any time." *See also Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 587 n.4 (Mo. 2013).  "When a motion for summary judgment is filed, the party against whom it is directed may not stand idly by doing nothing." *Duncan v. Dempsey*, 547 S.W.3d 815, 821 (Mo. App. E.D. 2018) (citation and internal quotation marks omitted).  If the non-movant wishes to conduct further discovery before the court rules on the summary judgment motion, it may move for a continuance under Rule 74.04(f).  Rule 74.04(f) provides:

> Should it appear from the affidavits of a party opposing the motion that for reasons stated in the affidavits facts essential to justify opposition to the motion cannot be presented in the affidavits, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"Rule 74.04(f) allows the trial court to postpone any ruling on a pending summary judgment motion to accommodate further discovery." *Brooks*, 340 S.W.3d at 209 (footnote omitted).

The Pantyukhins moved for summary judgment on Matysyuk's negligent entrustment claim on March 9, 2017. Instead of filing a motion for a continuance under Rule 74.04(f) so that he could conduct further discovery, Matysyuk responded to the Pantyukhins' motion on the merits on April 10, 2017. In his response, Matysyuk alleged additional facts, which he argued created a genuine issue of material fact regarding whether Igor was incompetent to drive. Matysyuk's opposition to the summary judgment motion relied on the discovery which had been completed to date. The Pantyukhins filed a reply memorandum, and Matysyuk then filed a motion to strike some of the Pantyukhins' responses to his additional facts, and a motion requesting leave to file a sur-reply to correct one of his additional facts. After the parties completed their motions practice, the Pantyukhins noticed their summary judgment motion for hearing on July 17, 2017.

Matysyuk only moved to stay the summary judgment proceeding so that he could conduct further discovery *after* the July 17 hearing was held. Matysyuk's motion was apparently prompted by comments the circuit court had made at the hearing on the Pantyukhins' motion. (We have not been provided with a transcript of that hearing.) By the time Matysyuk requested a stay, the Pantyukhins' motion for summary judgment had been pending for more than 4 months, the parties had fully briefed and argued the motion, and the circuit court had taken it under advisement.

6

The circuit court did not abuse its discretion by refusing to allow Matysyuk to have two bites at the apple: first, by responding to the Pantyukhins' summary judgment motion on the merits; and then by seeking to stay proceedings on the motion after the circuit court has apparently questioned his merits arguments, and taken the matter under advisement. The circuit court was entitled to hold that the time to seek relief pursuant to Rule 74.04(f) was during the briefing of the summary judgment motion, not after the motion had been fully (and extensively) briefed, and taken under advisement.

Rule 74.04 does not generally contemplate post-hearing briefing on a summary judgment motion. The Rule specifies that "[n]o other papers with respect to the motion for summary judgment [beyond the motion, response, reply, and sur-reply] shall be filed without leave of court," Rule 74.04(c)(5), and that "[a]fter the response, reply and any sur-reply have been filed or the deadlines therefore have expired, the court shall decide the motion." Rule 74.04(c)(6). A circuit court may have good reason to deny a post-hearing motion to stay. A stay motion may create the prospect of yet further briefing, since the party moving for summary judgment may wish to oppose the motion for stay with its own affidavits, arguing a lack of diligence or bad faith in the conduct of discovery by the party seeking the stay. It is within the circuit court's discretion to require that such matters be addressed in the course of the parties' summary judgment briefing, rather than after that briefing has concluded. *See Resolution Trust Corp. v. Lieberman*, 826 S.W.2d 55, 56 (Mo. App. E.D. 1992) (circuit court did not abuse its discretion when it denied a motion to stay involving a summary judgment motion which had been pending for seven months, where stay motion was filed four days before the summary judgment hearing).

Point II is denied.

7

## II.

In his first Point, Matysyuk challenges the merits of the circuit court's ruling granting the Pantyukhins summary judgment on his negligent entrustment claim.

"This Court reviews a grant of summary judgment *de novo*." *Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 842 (Mo. App. W.D. 2019) (citation and internal quotation marks omitted). "Summary judgment shall be entered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Folsom v. Mo. State Hwy. Patrol*, 580 S.W.3d 645, 649 (Mo. App. W.D. 2019) (citation and internal quotation marks omitted). "The Court reviews the record in the light most favorable to the party against whom judgment was entered, and gives the non-movant the benefit of all reasonable inferences from the record." *Messina*, 585 S.W.2d at 842 (citation and internal quotation marks omitted).

To prove a claim for negligent entrustment of a chattel by the defendant, a plaintiff must prove that:

> (1) the entrustee was incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) the entrustor knew or had reason to know of the entrustee's incompetence; (3) there was entrustment of the chattel; and (4) the negligence of the entrustor concurred with the conduct of the entrustee to cause the plaintiff's injuries.

*Lockhart v. Carlyle*, 585 S.W.3d 310, 313 (Mo. App. W.D. 2019) (citation and internal quotation marks omitted); *see also Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 324-26 (Mo. 2016); *Evans v. Allen Auto Rental & Truck Leasing Co.*, 555 S.W.2d 325, 326 (Mo. 1977).

"To establish their right to summary judgment, the [Pantyukhins] were required to negate at least one of the requisite elements of a claim for negligent entrustment." *Hallquist v. Smith*, 189 S.W.3d 173, 176 (Mo. App. E.D. 2006) (citation omitted). The Pantyukhins' motion contended that Matysyuk could not

prove the first element: that Igor was incompetent to drive their car. In his petition, Matysyuk did not allege that Igor was incompetent due to his age or inexperience. Instead, Matysyuk's petition alleged only that Igor was incompetent "due to his habitual reckless driving behavior." The Pantyukhins' summary judgment motion contended that the undisputed facts failed to establish Igor's habitual recklessness.

"Proof of the entrustee's incompetence is essential to establish liability under the doctrine of negligent entrustment." *Evans*, 555 S.W.2d at 326–27 (citation and internal quotation marks omitted). "Incompetence of the [entrustee] may be shown by specific acts of carelessness and recklessness committed by him." *Lix v. Gastian*, 261 S.W.2d 497, 500 (Mo. App. 1953) (citations omitted). To establish that an entrustee was incompetent by reason of habitual recklessness, "it must be shown that the reckless conduct of the [entrustee] was so constantly committed as to constitute a habit of negligence." *Id.* (citations omitted). Therefore, "proof of a single accident, even though accompanied by negligence, is not sufficient to establish habitual recklessness." *Peters v. Henshaw*, 640 S.W.2d 197, 200 (Mo. App. W.D. 1982); *accord*, *Schneider v. Warr*, No. 06-3252-CV-S-GAF, 2007 WL 9718150, at *3 (W.D. Mo. Sept. 19, 2007).

Igor's prior accident in September 2011, more than three years prior to the accident in which Matysyuk was injured, is insufficient to establish Igor's *habitual* recklessness. *See Portmann v. Stanley*, 674 S.W.2d 678, 679-80 (Mo. App. E.D. 1984) (affirming grant of summary judgment to parents who entrusted vehicle to son, where son had been involved in three prior accidents, but "[e]ach of these occurred more than two years before the collision now in issue"). Matysyuk's Brief understandably emphasizes the severity of the 2011 accident, and of the injuries that resulted. But the severity of the 2011 accident cannot change the fact that it

9

was a *single* accident, more than three years prior to the current incident. That single accident cannot establish a *habit* of recklessness on Igor's part.

Matysyuk also relies on Igor's 2012 citations for failure to wear a seatbelt, and for failure to properly restrain minors in his vehicle, as proof of his habitual recklessness. "Missouri, with other states, recognizes that a history of traffic violations is powerful evidence that a driver is incompetent [by reason of habitual recklessness] and that a jury can find incompetence solely on the basis of numerous traffic convictions." *LeCave v. Hardy*, 73 S.W.3d 637, 641 (Mo. App. E.D. 2002) (collecting cases). The temporal connection between the earlier traffic offenses and the accident causing the plaintiff's injuries, as well as the frequency of the traffic offenses, are important when determining whether an entrustee was incompetent by reason of habitual recklessness. *See Peters*, 640 S.W.2d at 200 ("[I]t becomes most important to determine when the offenses charged to [the entrustee] took place.").

Igor's citations in 2012 for seatbelt-related offenses cannot establish his habitual recklessness. These offenses occurred on a single occasion, more than two years before the relevant accident. Further, the circumstances underlying the 2012 citations are entirely different from the circumstances of the accident in which Matysyuk was injured.

Matysyuk also argues that the fact that Igor was listed as an excluded driver in the Pantyukhins' automobile liability insurance policy is evidence that Igor was incompetent to drive. The Eastern District rejected the argument that failure to maintain required insurance established habitual recklessness in *LeCave*. The court explained:

> The failure to obey the Motor Vehicle Financial Responsibility Law cannot serve as the basis for a claim of active negligence because there is no causal relationship between the failure to purchase insurance and the act of negligently operating a vehicle. In other

10

words, the absence of insurance is not a cause in fact or a contributing cause of an accident.

73 S.W.3d at 644 (citations omitted). This reasoning from *LeCave* applies with even greater force in this case, since the Motor Vehicle Financial Responsibility Law expressly authorizes vehicle owners to exclude designated household members from the owners' automobile liability insurance policies. *See* § 303.190.2(3), RSMo.

While the fact of Igor's exclusion from the Pantyukhins' insurance policy does not alone establish incompetence, *LeCave* recognized that "the circumstances causing a driver to be uninsured may be evidence that a driver is incompetent." 73 S.W.3d at 644. "For instance, if insurance companies refuse to insure a driver because he is too high a risk, or if he can obtain insurance only by paying an exorbitant premium, this may be evidence that provides notice to those aware of his uninsured status that he may be incompetent." *Id.* In this case, however, there is no evidence in the summary judgment record regarding the reasons why Igor was excluded from coverage under the Pantyukhins' insurance. The record is also silent as to whether Igor carried his own insurance. The fact that the Pantyukhins listed Igor as an excluded driver in their insurance policy does not, by itself, create a material question of fact as to whether Igor was incompetent to drive.

*LeCave* is clearly distinguishable. In that case, at the time of the relevant accident, the son to whom a father entrusted a vehicle was twenty-one years old. *Id.* at 640.

> Between the ages of 16 and 21 [the son] incurred convictions for seven speeding violations, one "following too close" violation, and one "careless and imprudent" violation. Two weeks before the accident [the son] was again ticketed, resulting in a conviction for speeding. [The son's] license had previously been suspended and he had a mandatory insurance suspension.

*Id.* In addition to the son's *ten* traffic violations (two of which occurred in the six months before the accident), his license had previously been suspended, and it was "uncontroverted that [the father]'s insurance company had specifically excluded [the

11

son] from its coverage of [the father]'s vehicles and that [the son] carried no insurance of his own." *Id*. at 640, 643. Based on the son's driving record and the circumstances underlying his failure to carry insurance, the Eastern District held that there was a material question of fact regarding whether the son was competent to drive an automobile. *Id*. at 644.

Unlike in *LeCave*, in this case the summary judgment record contains evidence of only two separate incidents, the most recent one occurring more than two years before the accident underlying this lawsuit. Unlike in *LeCave*, in this case the summary judgment record lacks any evidence concerning the circumstances surrounding Igor's exclusion from his parents' insurance, or concerning whether he carried insurance of his own. Because there is no evidence in the record that Igor did not maintain his own insurance, Matysyuk's claim that the Pantyukhins violated Missouri's Motor Vehicle Financial Responsibility Law by allowing Igor to drive their vehicle is unsupported.

Matysyuk's brief also refers to traffic citations received in November 2016 by another child, while he was driving the Pantyukhins' vehicle. Those citations post-date the accident at issue here by more than two years, and involve a different person to whom the Pantyukhins apparently entrusted a different family vehicle. The 2016 citations cannot establish a triable issue on Matysyuk's negligent entrustment claim.

The circuit court did not err in granting summary judgment in favor of the Pantyukhins on Matysyuk's negligent entrustment claim. Point I is denied.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.