David and Crystal HOLM,
Respondents,

v.

WELLS FARGO HOME MORTGAGE,
INC., and Federal Home Loan Mort-
gage Corporation (Freddie Mac), Ap-
pellants.

No. SC 95755

Supreme Court of Missouri,
en banc.

Opinion issued February 28, 2017

Rehearing Denied April 25, 2017

Wells Fargo was represented by Eric D. Martin, Elizabeth C. Carver and Jonathan B. Potts of Bryan Cave LLP in St. Louis, (314) 259–2000; and Robert M. Thompson

of Bryan Cave LLP in Kansas City, (816) 374–3200.

The Holms were represented by Kenneth B. McClain of Humphrey, Farrington & McClain PC in Independence, (816) 836–5050; and Gregory A. Leyh of Gregory Leyh PC in Gladstone, (816) 283–3380.

Mary R. Russell, Judge

This case arises out of the 2008 foreclosure of the family residence of David and Crystal Holm (the Holms). The Holms filed a wrongful foreclosure action against Wells Fargo Home Mortgage, Inc., for allegedly foreclosing on their home without right. They also filed a quiet title action against the Federal Home Loan Mortgage Corporation (Freddie Mac), which took title to the house after the foreclosure sale.[1]

During pretrial proceedings, a number of discovery disputes arose between the parties, requiring the trial court to issue numerous orders compelling the mortgage companies to produce documents and witnesses for deposition. Because of their obstructive discovery tactics, the trial court sanctioned the mortgage companies by striking their pleadings and preventing them from: (1) presenting any evidence at trial; (2) objecting to the Holms' evidence; and (3) cross-examining any of the Holms' witnesses. Shortly after the sanctions order was entered, the Holms waived their right to a jury trial.

On the day of trial, the mortgage companies demanded the case be tried to a jury, arguing they had a constitutional right to jury trial, which they had never waived. The trial court denied the request and proceeded to a bench trial. The court entered judgment in favor of the Holms on their wrongful foreclosure claim, awarded them actual and punitive damages, and quieted title to the house in the Holms.

The mortgage companies appealed from the imposition of sanctions, denial of their request for a jury trial, and entry of judgment for the Holms on the wrongful foreclosure and quiet title claims. The mortgage companies also contest the propriety of the actual and punitive damages awarded by the trial court.

This Court holds that the trial court properly exercised its discretion in sanctioning the mortgage companies for their discovery violations. Additionally, the trial court's conclusion that Wells Fargo wrongfully foreclosed on the Holms' house was supported by substantial evidence and was not against the weight of the evidence. Because the mortgage companies had a constitutional right to have a jury determine the extent of the Holms' actual and punitive damages on the wrongful foreclosure claim, the trial court's judgment awarding damages and quieting title to the house in the Holms must be reversed. The trial court's judgment is affirmed in part and reversed in part, and the case is remanded for a new trial before a jury on the Holms' damages for wrongful foreclosure.

**Factual Background**

In 2001, the Holms purchased their home, which is located in Clinton County. The Holms executed a deed of trust on the house to secure a promissory note. The deed of trust identified the lender/mortgagee as Commercial Federal Mortgage Corporation. At some point after the Holms bought the house, Freddie Mac acquired the promissory note and Wells Fargo began servicing the note on behalf of Freddie Mac.

---

1. Wells Fargo and Freddie Mac will be collectively referred to as "the mortgage companies" throughout the opinion.

The Holms' house suffered significant storm damage in the spring of 2008. An insurance check for $4,467.74 was issued to the Holms to cover the cost of the storm damage. The check was made payable to the Holms and to Wells Fargo. The Holms sent the check to Wells Fargo to obtain its endorsement so the Holms could use the funds to repair their house. Wells Fargo refused to return the check.

In June 2008, Kozeny and McCubbin, L.C. (Kozeny), acting as attorneys for Wells Fargo, notified the Holms that their note had been accelerated and they would need to pay $6,608.93 to reinstate the note. In a letter to Kozeny, the Holms disputed the notice of default. They acknowledged that they had been behind on their payments but stated they had a payment plan in place with Wells Fargo. The Holms also contended their loan was erroneously accelerated because an agent of Wells Fargo saw the Holms removing items from their storm-damaged barn and mistakenly believed they were abandoning their home. The Holms believed the insurance check was retained by Wells Fargo and would be applied to bring their note current.

Kozeny responded by informing the Holms that they instead would be required to pay the entire loan amount, plus fees and costs, to reinstate the promissory note. The Holms sent a second letter to Kozeny disputing the amount of the debt and requesting Wells Fargo return the insurance check endorsed so the Holms could apply that amount toward reinstatement of their loan.

Kozeny sent the Holms copies of their deed of trust and promissory note to verify the amount of the debt owed. The copy of the note sent by Kozeny was not endorsed and did not identify Freddie Mac or Wells Fargo or explain how they were entitled to enforce the note. Wells Fargo never released the insurance funds to the Holms, nor did it apply the funds to the Holms' debt.

Kozeny was named successor trustee to the Holms' deed of trust in July 2008 and scheduled a foreclosure sale for August 2008. The Holms repeatedly contacted Wells Fargo and Kozeny before the foreclosure sale in an effort to resolve the dispute. On the night before the foreclosure sale was scheduled to take place, the Holms reached an agreement with a Wells Fargo representative. The representative told the Holms that if they agreed to pay a reinstatement amount of $10,306.94, the foreclosure sale would be postponed. The Holms were advised to contact Kozeny the next morning to confirm the amount and arrange for delivery of the payment. The Holms were told their payment did not have to be received before the foreclosure sale scheduled at noon of the following day.

The Holms called Kozeny the next morning as instructed. Kozeny confirmed the reinstatement amount and advised the Holms that someone would call that afternoon with directions for sending a cashier's check for the agreed-upon amount. Kozeny assured the Holms the foreclosure sale would be postponed.

That same day, David Holm secured a cashier's check in the amount of $10,306.94. He visited his local physician for treatment of stress, anxiety, and panic attacks. The physician directed him to go to the hospital, where he had a heart monitor attached to his chest.

Kozeny called the Holms later that afternoon and instructed them to overnight the cashier's check to Kozeny's St. Louis office and to send a copy of the check by facsimile. The Holms followed these instructions. Unbeknownst to the Holms, however, the foreclosure sale proceeded at

noon as scheduled. Freddie Mac purchased the house at the sale.

Several days after the foreclosure sale, the Holms received a letter from Kozeny returning the cashier's check. The letter indicated the check was returned because it was not received before the foreclosure sale. The Holms received a second letter from Kozeny stating the cashier's check was returned because the funds were not "enough and/or not certified."

The Holms retained counsel and were subsequently offered another reinstatement amount of $8,162.24. The Holms again sent a cashier's check in that amount to Wells Fargo. Wells Fargo did not reinstate the loan but, instead, retained the check for approximately one year before returning it.

The Holms filed a three-count petition against the mortgage companies. Count I sought compensatory and punitive damages from Wells Fargo for wrongfully foreclosing on the Holms' loan. Counts II and III were asserted against only Freddie Mac and sought to quiet title to the house in the Holms and set aside the trustee's deed recorded in favor of Freddie Mac after the foreclosure sale.

After a lengthy period of inaction in the case, the Holms retained new counsel and initiated discovery. For several years, the parties sparred over discovery disputes.[2] In a pretrial order issued two days before the case was scheduled for trial, the trial court made a detailed account of the mortgage companies' discovery abuses on the record and concluded the mortgage companies' conduct, and the conduct of their attorneys, demonstrated "a pattern of con-

tempt for the Missouri Supreme Court Rules, as well as this Court's rules and Orders." As sanctions for the mortgage companies' discovery abuses, the trial court struck the mortgage companies' pleadings and prohibited them from: (1) offering evidence at trial; (2) cross-examining any of the Holms' witnesses; and (3) objecting to the admission of evidence offered by the Holms regarding the issues of liability and damages. The trial court further ordered the mortgage companies to pay the Holms' attorney fees and costs incurred in pursuing discovery.

The day after the trial court announced the sanctions, the Holms filed a waiver of their right to a jury trial. When the parties appeared for trial on the following day, the mortgage companies argued they had a right to a jury trial, which they had not waived at any point during the proceedings. The trial court concluded that the mortgage companies had waived their right to a jury trial by failing to request a jury prior to the date of trial and by failing to submit jury instructions to the court. The case proceeded to trial without a jury.

The trial court found in favor of the Holms on Counts I and II of their petition.[3] The trial court's judgment awarded the Holms $95,912.30 in compensatory damages, $200,000 for emotional distress, and $2,959,123 in punitive damages for their wrongful foreclosure claim against Wells Fargo. The judgment also quieted title to the house in the Holms because it found the evidence demonstrated that neither Wells Fargo nor Freddie Mac had the right to enforce the promissory note.

This appeal follows.[4]

---

2.  Details of the discovery disputes and the mortgage companies' conduct giving rise to the sanctions will be set out in the discussion section of this opinion.

3.  Before the case went to trial, the Holms voluntarily dismissed the third count in their petition.

4.  This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

### Standard of Review

When reviewing a trial court's judgment in a court-tried case, the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Hunter v. Moore*, 486 S.W.3d 919, 925 (Mo. banc 2016). Trial courts are free to believe any, all, or none of the evidence presented. *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014). In this case, the trial court did not set out detailed findings of fact and conclusions of law,[5] although the judgment does summarize the factual and legal bases for awarding the Holms actual and punitive damages and quieting title to the house in the Holms. Any issues of fact upon which no specific findings are made shall be considered as having been found in accordance with the result reached. Rule 73.01(c).

Evidence is substantial when it has some probative force on each fact that is necessary to sustain the trial court's judgment. *Ivie*, 439 S.W.3d at 199. When considering whether a judgment is supported by substantial evidence, appellate courts must view the evidence in the light most favorable to the trial court's judgment, defer to the trial court's credibility determinations, and accept as true the evidence and inferences favorable to the judgment while disregarding contrary evidence. *Id.* at 200.

A claim that the trial court's judgment is against the weight of the evidence presupposes there is sufficient evidence to support the judgment and effectively weighs "how much persuasive value evidence has." *Id.* at 205–06. Such a challenge serves only to check the trial court's

potential to abuse its power in weighing the evidence. *Id.* at 206. An appellate court approaches such arguments cautiously and reverses only in rare instances when it has a firm belief the trial court's judgment is wrong. *Id.*

Legal questions in a court-tried case are subject to *de novo* review. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

Finally, this Court will not overrule the trial court's decision to impose sanctions unless the decision constitutes an abuse of discretion. *Lewellen v. Franklin*, 441 S.W.3d 136, 149 (Mo. banc 2014). A trial court abuses its discretion only when its ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (internal quotations omitted).

### Discussion

#### 1. Sanctions

The mortgage companies claim the trial court abused its discretion by imposing sanctions because: (1) the mortgage companies did not act in flagrant disregard of the trial court's authority; (2) the Holms were not prejudiced by the discovery disputes; and (3) the sanctions were extreme and did not match the alleged discovery misconduct committed by the mortgage companies.

Rule 61.01 gives trial courts significant discretion to impose sanctions that are "just" when a party fails to answer interrogatories, produce documents, or attend depositions. Rule 61.01(b), (d), (f). The rule expressly contemplates that a trial court

---

**5.** No party requested that the trial court make specific findings of fact and conclusions of law.

may, in its discretion, sanction a party for such misconduct by striking pleadings, limiting the party's ability to present evidence or otherwise participate at trial, entering a default judgment against the disobedient party, and requiring the disobedient party to pay the reasonable expenses incurred by the other party in pursuing discovery. *Id.*

The record here supports the trial court's conclusion that the mortgage companies engaged in flagrant and intentionally obstructive conduct during discovery proceedings by:

(1) failing to produce requested documents or respond to written discovery, even after ordered to do so by the trial court and the special master, who was appointed to resolve discovery disputes in the weeks preceding the trial;

(2) continuing to assert previously overruled objections to the Holms' discovery requests;

(3) repeatedly misleading the trial court and the Holms' counsel about the online availability of relevant requested documents, causing the Holms' counsel to spend considerable amounts of time searching for documents that were not actually available on the Internet;

(4) misleading the trial court by representing in open court that certain requested documents did not exist, when the documents did exist and could have been produced, as a corporate representative for Wells Fargo stated in a deposition;

(5) failing to contact appropriate employees of the mortgage companies who would have been able to provide documents that the trial court ordered the mortgage companies to produce; and

(6) repeatedly failing to produce witnesses for depositions, even when ordered by the special master to have a witness appear at a date and time agreed upon by counsel for all parties.

The trial court warned the mortgage companies on numerous occasions that this pattern of conduct could result in sanctions, and, when the discovery violations continued in the weeks leading up to trial, the court concluded that the mortgage companies' conduct demonstrated "a contumacious and deliberate disregard for the authority of th[e] court." The trial court found that the mortgage companies had engaged in a "deliberate and calculated effort to prevent plaintiff[s] from preparing their case" and that the Holms were prejudiced in their attempts to collect and present evidence and to prepare for any defense the mortgage companies might make at trial. In light of the mortgage companies' intentional efforts to obstruct discovery and prevent the Holms from preparing for trial, the trial court determined it would be fundamentally unfair to allow the mortgage companies to present evidence of any kind at trial:

> The defendants have, by their actions, attempted to make a mockery of this judicial system, and it's time to pay the piper. It's, therefore, ordered that in addition to having their pleading stricken, the defendants are prohibited from questioning, either direct or cross-examination, any witness in this case either as they may relate to the issue of liability, actual, or punitive damages.

This Court, pursuant to Rule 61.01, has granted trial courts significant discretion in imposing sanctions for discovery violations. *See Lewellen*, 441 S.W.3d at 149–50 (trial court did not abuse its discretion in striking the defendants' pleadings and precluding them from defending against the plaintiff's claims when they repeatedly failed to produce witnesses for depositions); *see also Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647–48 (Mo. banc 1997)

(trial court did not abuse its discretion by excluding the testimony of the plaintiff's treating physician as a sanction for the plaintiff's failure to timely disclose the witness). Rule 61.01 expressly permits imposition of such sanctions when doing so is a "just" response to discovery violations like those committed by the mortgage companies. Not only did the mortgage companies clearly and repeatedly violate the rules of discovery in what appears to have been a purposefully obstructive course of conduct, but the trial court also warned the mortgage companies numerous times that their conduct could result in severe sanctions. The trial court's judgment imposing sanctions on the mortgage companies is affirmed.

### 2. Wrongful Foreclosure

■ The mortgage companies argue the trial court erroneously awarded the Holms actual and punitive damages on their wrongful foreclosure claim because the Holms failed to make the required showing that they were not in default when the foreclosure proceedings commenced.

■ "The commencement of a foreclosure of a deed of trust cannot be wrongful when there is a clear right to foreclose." *Loeb v. Dowling*, 349 Mo. 674, 162 S.W.2d 875, 877 (1942); *see also Dobson v. Mortg. Elec. Registration Sys., Inc./ GMAC Mortg. Corp.*, 259 S.W.3d 19, 22 (Mo. App. 2008). To maintain a tort action for damages for wrongful foreclosure, a plaintiff must "plead and prove that when

the foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose." *Dobson*, 259 S.W.3d at 22. While the "improper execution of a rightful foreclosure" may be sufficient grounds for an equitable claim to set aside the sale, damages at law for wrongful foreclosure are only available when "the foreclosure was absolutely void because the mortgagee had no right to foreclose at the time he attempted foreclosure." *Peterson v. Kan. City Life Ins. Co.*, 339 Mo. 700, 98 S.W.2d 770, 774 (1936).

Consequently, in awarding the Holms damages on their wrongful foreclosure claim, the trial court was required to find that the Holms were not in default on their loan. *See* Rule 73.01(c) (any issues of fact on which no specific findings are made are considered as having been found in accordance with the trial court's judgment). To support their argument that the evidence clearly demonstrated the Holms' default, the mortgage companies rely primarily on evidence indicating that the Holms had missed or were behind on some of their loan payments. The mortgage companies, however, fail to address evidence in the record that the Holms' loan was not accelerated due to the allegedly missed loan payments, and that the Holms had arranged a payment plan with Wells Fargo so their loan was not in default. By failing to address the evidence in the light most favorable to the trial court's judgment, the mortgage companies fail to comply with the applicable standard of review.[6] *Hunter*, 486 S.W.3d at 926–27.

**6.** The mortgage companies claim they have "a right to judgment on the wrongful foreclosure claim" as a matter of law, so this Court's review should be *de novo*. The mortgage companies do not point to any portion of the trial court's judgment, however, that misstates or misapplies the law. They instead rely entirely on evidence they claim establishes the Holms' default. Whether the evidence clearly estab-

lished default is a question of fact, not one of law. Because the mortgage companies mistakenly characterize their challenge as a legal question subject to *de novo* review, they fail to state whether their argument is a sufficiency of the evidence challenge or an against the weight of the evidence challenge. "[T]hese two standards are separate and distinct," and the mortgage companies were required to set

After reviewing the record, this Court concludes that the trial court's judgment is supported by substantial evidence and is not against the weight of the evidence. The Holms' petition asserted Wells Fargo "falsely proceeded to accelerate the note" based on the mistaken conclusion the Holms were abandoning their home. The Holms consistently denied they were in default throughout the proceedings below and on appeal. At trial, the Holms adduced evidence that, although they had missed some payments prior to acceleration of the loan, they were making payments under a payment plan they arranged with Wells Fargo. Consistent with their pleadings, the Holms also testified the loan was wrongfully accelerated because a Wells Fargo agent mistakenly believed the Holms were abandoning their house. The Holms admitted into evidence the letters they had sent to Kozeny after the loan was accelerated, in which they disputed that the loan was in default, claimed they had arranged a payment plan with Wells Fargo, and sought to have the loan reinstated. As the trial court is free to believe any, all, or none of the evidence, *see Ivie*, 439 S.W.3d at 200, it was entitled to believe the Holms were not in default on their loan because they were making payments pursuant to a payment plan and the loan was wrongfully accelerated because Wells Fargo mistakenly believed the Holms were abandoning their house.

Additionally, the Holms presented evidence that the Holms and Wells Fargo reached a reinstatement agreement the night before the foreclosure sale, under which the Holms were to send an agreed-upon amount to Wells Fargo and the foreclosure sale would be postponed. David Holm testified he followed the directions provided to him by Kozeny and Wells Fargo, yet they went ahead with the foreclosure sale without notifying the Holms despite that agreement.

The mortgage companies dispute the enforceability of the reinstatement agreement because a provision in the deed of trust prevented oral modifications or amendments to the loan. This argument is an affirmative defense. *See Warren v. Paragon Techs. Grp., Inc.*, 950 S.W.2d 844, 845–46 (Mo. banc 1997). The mortgage companies were required to plead and prove this affirmative defense, *see id.* but did not do so, as their pleadings were stricken as sanctions for discovery abuses. Further, the Holms introduced evidence from the Freddie Mac servicing agreement[7] indicating that Wells Fargo was permitted to orally agree to reinstate a loan and would be bound by any such agreement. Based on this evidence, the trial court could have found the Holms were not in default at the time of the foreclosure sale because they entered into and complied with an enforceable reinstatement agreement with the mortgage companies prior to the sale, thereby depriving Wells Fargo of the right to foreclose.[8]

out these claims in separate points on appeal. *Laut v. City of Arnold*, 491 S.W.3d 191, 197 (Mo. banc 2016). Nonetheless, this Court has, in its discretion, reviewed the record below to determine whether the trial court's judgment complied with both standards.

7. A servicing agreement is a contract between the owner of a promissory note and the servicer that provides the rules and policies a servicer must follow in enforcing the note. In this case, the Holms introduced into evidence Freddie Mac's servicing agreement that would have applied to their promissory note, which was owned by Freddie Mac and serviced by Wells Fargo.

8. Because this Court finds the evidence at trial supported the Holms' wrongful foreclosure claim, as the trial court could have found the Holms were not in default based on the evidence presented, the Court need not ad-

### 3. Right to Jury Trial

■ The mortgage companies claim the trial court misstated and misapplied the law in refusing to grant their request for a jury trial because they had a constitutional right to have a jury determine the damages assessed against them, which they never waived.

"[T]he right of trial by jury as heretofore enjoyed shall remain inviolate." Mo. CONST. Art. I, sec. 22(a). Both statute and court rule reiterate protection for this constitutional right. Section 510.190.1, RSMo 2000 ("The right of trial by jury as declared by the constitution or as given by a statute shall be preserved to the parties inviolate."); Rule 69.01(a) ("The right of trial by jury ... shall be preserved to the parties inviolate.").

■ The right to a jury trial in a civil action for damages is a personal right that may be waived. *Meadowbrook Country Club v. Davis*, 421 S.W.2d 769, 772 (Mo. banc 1967); *see also State ex rel. Morgan v. Colyer*, 245 S.W.3d 244, 246 (Mo. App. 2008). Section 510.190.2 provides that a party may waive the right to a jury trial by: (1) not appearing at trial; (2) filing a written waiver with the clerk of the court; (3) giving oral consent to a bench trial in court; and (4) "entering into trial before the court without objection." As the courts of this state have consistently recognized, section 510.190.2 sets forth the *exclusive* methods of waiver. *Morgan*, 245 S.W.3d at 246; *see also, e.g., Meadowbrook*, 421 S.W.2d at 773; *Advanced Transmissions, L.C. v. Duff*, 9 S.W.3d 743, 744 (Mo. App. 2000). Consequently, a party need not demand a jury to preserve its right to a jury trial in a Missouri state court, as would be required in federal courts. *Advanced Transmissions*, 9 S.W.3d at 744.

The mortgage companies did not waive their right to a jury trial because they did not fail to appear at trial, file a written waiver with the clerk of the court, consent to a bench trial in open court, or enter into the trial before the bench without objection. The trial court did not find waiver on any of those grounds but, instead, concluded that the mortgage companies waived their right to a jury trial by failing to affirmatively request a jury trial until the day of trial or submit jury instructions when the trial court requested them. This conduct led the court to believe that the mortgage companies insisted on a jury trial on the day of trial only as a delay tactic.

Such conduct might rise to the level of waiver of rights other than the right to a jury trial. *See State v. Chambers*, 481 S.W.3d 1, 6 (Mo. banc 2016) (criminal defendant showed a clear and unequivocal intent to waive his statutory right to a change of venue by assuring the court that he was prepared for trial in the original venue and failed to notice up a motion for change of venue until the day before trial). Because the right to a jury trial is guaranteed absent a waiver through one of the methods prescribed by section 510.190.2, the mortgage companies were not required to affirmatively request a jury trial to preserve their constitutional right, nor could the failure to file jury instructions waive that right. *See Advanced Transmissions*, 9 S.W.3d at 744.

The Holms argue the case should not be remanded for a jury trial on the issue of damages because the trial court's sanctions effectively rendered the Holms' petition "uncontested." The Holms claim that, by imposing these sanctions, the trial court

---

dress the mortgage companies' final argument that the evidence clearly established that Wells Fargo had the legal right to enforce

the Holms' note as the holder and servicer of the note.

essentially rendered a default judgment as to liability and damages against the mortgage companies. The loss of the right to a jury trial, the Holms contend, is simply "the natural and logical extension of the punishment" for the discovery abuses.

To support their argument, the Holms rely on precedent from this Court holding that the imposition of sanctions, such as those here, constituted a finding that a defendant was liable for the conduct charged in the petition. *Lewellen*, 441 S.W.3d at 150 ("In striking [the defendants'] pleadings and precluding them from defending against [the plaintiff's] claims, the court, in effect, found [the defendants] liable."). While this case demonstrates that the trial court's sanctions here effectively amounted to a judgment that the mortgage companies were liable for the wrongful foreclosure of the Holms' home, it does not address whether such sanctions could deprive the mortgage companies of their constitutional right to have a jury decide the Holms' damages. This question is one of first impression for Missouri courts.

▮▮▮▮▮▮ The right to a jury trial includes the right to have a jury determine the plaintiff's damages. *Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633, 639 (Mo. banc 2012); *see also Lewellen*, 441 S.W.3d at 143 (determining punitive damages is "a peculiar function of the jury"). Once the right to a jury trial attaches, as it does to the Holms' wrongful foreclosure claim, any legislation or rule of procedure that "curtails the jury's determination of damages" "necessarily infringes on the right to trial by jury." *Watts*, 376 S.W.3d at 640.

▮▮▮▮▮▮ In accordance with this precedent, the imposition of sanctions, such as those here, does not strip a party of its right to have a jury determine the amount of damages. Even when a defendant defaults in a case or incurs sanctions striking its pleadings and preventing it from participating at trial, there must still be a hearing to prove the plaintiff's damages. Any defendant that has not waived its right to a jury trial can request a jury determine those damages.[9] Rule 61.01 is not inconsistent, as it does not expressly permit the trial court to deny the sanctioned party a jury trial. Interpreting the rule to imply that a jury trial may be withheld as a discovery sanction, as the Holms urge the Court to do here, would put the rule at odds with article I, section 22(a) of the Missouri Constitution because such an interpretation would be an impermissible judicial alteration of the constitutional right to a jury trial. *Watts*, 376 S.W.3d at 639–42 (statute purporting to set a cap on the damages that may be awarded in a common law medical negligence action was an unconstitutional abridgment of the right to a jury trial because one of the jury's primary functions is to determine the plaintiff's damages).

*Lewellen* illustrates this principle. The plaintiff in *Lewellen* asserted claims of common law fraudulent misrepresentation and unlawful merchandising practices under the Missouri Merchandising Practices Act against a car dealership and its owner. 441 S.W.3d at 141. Because the defendants in the case repeatedly failed to appear for depositions, the trial court entered sanctions striking the defendants' pleadings, preventing them from admitting any evidence in their defense, limiting their participation in *voir dire*, and allowing them to cross-examine the plaintiff's witnesses only with regard to the issue of damages.

---

**9.** *See* Rule 74.05(b) (after an interlocutory order of default has been entered against a party that failed to plead or otherwise defend a lawsuit, "[a]ny party may demand a jury to assess damages").

*Id.* Even though the trial court treated the defendants as though they were in default and effectively found the defendants liable for the conduct alleged in the petition, a jury still decided the plaintiff's damages.[10] *Id.* at 141, 150.

None of the cases relied on by the Holms support their argument that the mortgage companies could be denied their constitutional right to a jury trial on damages as a discovery sanction. Two of the cases the Holms cite, *Eidson ex rel. Webster v. Eidson*, 7 S.W.3d 495, 499 (Mo. App. 1999), and *Karolat v. Karolat*, 151 S.W.3d 852, 857 (Mo. App. 2004), involved family law matters for which there would have been no right to a jury trial in the first place. *See Ray v. Ray*, 330 Mo. 530, 50 S.W.2d 142, 145–46 (1932) (divorce proceedings are in the nature of equity suits and are triable by the court without a jury). In *Davis v. Chatter, Inc.*, the trial court struck the defendants' pleadings and entered a default judgment for the plaintiffs. 270 S.W.3d 471, 474 (Mo. App. 2008). The defendants did not object to having a hearing on damages without a jury, nor did they argue on appeal that the trial court violated their constitutional right to a jury trial by failing to submit the question of damages to a jury. *Id.* at 475–82. Finally, in *Scott v. LeClercq*, the defendant filed a demand for a jury trial after the trial court struck his pleadings and entered a default judgment in favor of the plaintiff. 136 S.W.3d 183, 188 (Mo. App. 2004). The trial court denied the motion and held a hearing on the issue of damages without a jury. *Id.* On appeal, the defendant argued in his reply brief that the

denial of his demand for a jury trial violated his constitutional right to have damages determined by a jury. *Id.* at 193. Because the defendant failed to raise the constitutional claim in the trial court or in his original appellate brief, the court of appeals held the defendant failed to preserve the claim and did not reach the merits of his argument. *Id.*

The mortgage companies did not waive their right to a jury trial under section 510.190.2. They further preserved their constitutional argument by raising it at the first opportunity before the trial court and by properly presenting the claim on appeal. Because the mortgage companies had a constitutional right to have a jury determine the amount of the Holms' damages, the trial court's judgment awarding the Holms' damages must be reversed, and the cause must be remanded for a jury trial on the issues of actual and punitive damages on the Holms' wrongful foreclosure claim.

## Conclusion

The trial court's order imposing sanctions on the mortgage companies is affirmed and continues on remand. The trial court's judgment finding the mortgage companies liable to the Holms for wrongful foreclosure is also affirmed. In all other respects, the judgment is reversed, and the case is remanded for the limited purpose of allowing a jury to determine what actual and punitive damages the Holms are entitled to as a result of the mortgage companies' wrongful foreclosure of the Holms' home. Following the jury trial, the trial court may determine what, if any,

---

**10.** It appears that the trial court in *Lewellen* did permit the defendants to cross-examine witnesses on the issue of damages, whereas the trial court here prohibited the mortgage companies from putting on any evidence or cross-examining any witnesses on both liability and damages. This small difference in the

sanctions imposed does not affect the conclusion that, even if a defendant is prevented from participating in any way at the trial due to discovery sanctions, the defendant still has a right under the Missouri Constitution to have a jury decide the extent of the plaintiff's damages.

additional equitable remedy is appropriate.[11]

Breckenridge, C.J., Fischer, Stith, Draper and Wilson, JJ., concur.

11. Because this Court is remanding the case for a new trial on damages, the Court does not reach the mortgage companies' remaining arguments on appeal.