EDWARD R. ARDINI, JR., JUDGE
James Jacoby ("Jacoby") appeals from the judgment entered by the Circuit Court of Chariton County, Missouri ("trial court") in favor of AGRIServices of Brunswick, LLC ("ASB") on its claim to recover money owed as an unpaid balance on account and against Jacoby on his counterclaims *433 for negligent and fraudulent misrepresentation. We affirm the trial court's judgment as modified.
Factual and Procedural Background
ASB is a full service agricultural retailer with several locations in and around Chariton County. Their business consists primarily of selling seed for use in farming and providing fertilizer application and weed spraying services. Jacoby is a farmer who has been a customer of ASB since at least 2002. In Mid-May of 2015, Jacoby spoke to an ASB sales representative regarding a potential purchase of soybean seed. At the time, he did not know the exact type of seed he wanted and informed the sales representative that he would call back after making his decision. Jacoby contacted the sales representative again on July 2 to place his first order for 120 units of Mycogen 5N393R2 seed ("393 seed").[1] The sales representative informed Jacoby that they currently had "treated seed" in stock, which ASB wanted to sell off before the end of the planting season, and that ASB would not charge him the extra cost for the treatment.[2] Jacoby agreed to accept delivery of treated 393 seed. The sales representative completed the delivery on the same day the order was placed, and Jacoby accepted the delivery without complaint.
Jacoby contacted ASB again on July 6 requesting an additional 200 units of 393 seed. ASB's sales representative responded by delivering a shipment of treated seed in the requested amount on the same day. This seed delivery was also accepted by Jacoby without complaint. On July 13, Jacoby made a third and final request for seed. This time however he ordered Mycogen 5N431R2 seed ("431 seed").[3] ASB delivered the 431 seed the following day. Unlike the 393 seed, the 431 seed that was delivered had not been treated. Once again, the delivery of the seed was accepted by Jacoby without complaint. The ASB sales representative who made the deliveries testified that he left a delivery ticket for the seed sitting on the dashboard of Jacoby's truck in all three instances. However, ASB concedes that it failed to include a "seed tag" with each delivery as required by section 266.051.[4] After all three deliveries had been received, Jacoby proceeded to plant the seed in his fields.
ASB began sending account statements to Jacoby in late July of 2015. These statements included charges for both the seed that had been delivered as well as weed spraying and fertilizer application services that ASB had performed on Jacoby's behalf during the same year. Despite *434 receiving these statements, Jacoby made no effort to pay the amounts due. ASB continued its efforts to collect payment from Jacoby and, in March of 2016, Jacoby met with ASB's retail sales manager to discuss the amount outstanding on the account. During this March meeting, Jacoby complained about the type and amount of fertilizer used by ASB, the acreage sprayed for weeds, and the seed prices that he had been charged compared to the prices he had been quoted.[5] Jacoby did not raise any complaint regarding the types of seed that were delivered or the failure of ASB to provide seed tags. While the sales manager disagreed with Jacoby's complaints, he nevertheless sought to appease him by providing a credit that reduced the amount owed for the fertilizer and weed spraying as well as the seed purchases. Jacoby then tendered payment for the reduced fertilizer and weed spraying charges, which ASB accepted. The charges relating to the seed ASB had provided remained unpaid.
On July 26, 2016, ASB initiated the current action by bringing a one-count petition to recover the outstanding balance owed on Jacoby's account. Jacoby responded by filing a single count counterclaim that he later amended to three counts. In the first count, Jacoby claimed that he had only ordered untreated 393 seed from ASB and that ASB's delivery of treated 393 and untreated 431 seed, coupled with the fact that ASB had failed to provide seed tags when delivering the seed in violation of section 266.051, resulted in damages because he was unable to properly manage the control of weeds in his bean field.[6] The second and third counts alleged negligent and fraudulent misrepresentation respectively regarding ASB's delivery of treated 393 and untreated 431 seed, as these were not what Jacoby claimed ASB represented it would supply.
The case was tried to the trial court without a jury. The trial court ruled in favor of ASB, finding that Jacoby had ordered both 393 and 431 seed and had also agreed to accept treated as opposed to untreated 393 seed.[7] The trial court further denied Jacoby's counterclaims concluding that ASB had delivered "exactly what he agreed to purchase" and had neither negligently nor fraudulently misled him. The trial court awarded ASB $21,420.00 in damages for the unpaid amount owed on the account as well as prejudgment and postjudgment interest at the statutory rate of 9% per annum.[8] Jacoby now appeals.
Standard of Review
"When reviewing a trial court's judgment in a court-tried case, the judgment *435 will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Holm v. Wells Fargo Home Mortgage, Inc. , 514 S.W.3d 590, 596 (Mo. banc 2017) (quoting Hunter v. Moore , 486 S.W.3d 919, 925 (Mo. banc 2016) ). The trial court is "free to believe any, all, or none of the evidence presented." Id. (quoting Ivie v. Smith , 439 S.W.3d 189, 200 (Mo. banc 2014) ). "In reviewing whether a judgment is supported by substantial evidence, this Court views the evidence in the light most favorable to the judgment, accepting as true evidence and inferences favorable to the judgment and disregarding all contrary evidence." In re A.L.R. , 511 S.W.3d 408, 413 (Mo. banc 2017). "Evidence is substantial when it has some probative force on each fact that is necessary to sustain the trial court's judgment." Holm , 514 S.W.3d at 596. Likewise, "where the resolution of conflicting testimony is required to determine the merits of an against-the-weight-of-the-evidence argument, we defer to the trial court's credibility determinations in the same manner as in the resolution of a not-supported-by-substantial-evidence argument." Houston v. Crider , 317 S.W.3d 178, 186 (Mo. App. S.D. 2010). "A claim that the trial court's judgment is against the weight of the evidence presupposes there is sufficient evidence to support the judgment and effectively weighs 'how much persuasive value [the] evidence has.' " Holm , 514 S.W.3d at 596 (quoting Ivie , 439 S.W.3d at 205-06.).
Analysis
Jacoby raises five points on appeal. In his first point, he contends that the trial court erred in entering judgment in favor of ASB on its action on account because ASB failed to "establish that it delivered the seed in a customary manner." Such an argument is perplexing given that no Missouri court has ever found delivery of merchandise "in a customary manner" to be an element for an action on account.[9] Jacoby seems to understand this fact as his brief properly identifies the three well defined elements for an action on account without including any mention of the manner of delivery. Jacoby nevertheless persists in maintaining that ASB was required to establish that its delivery of the seed was done "in a customary manner" and points to section 266.051, which obligates those selling seed for agricultural use to affix a label to each container giving information regarding the particular seed held within, to support his contention. However, there is nothing in section 266.051 to suggest it modifies or adds to the elements of the common law based action on account. Nor does Jacoby direct this court to any case law or other legal sources to support his conclusion that section 266.051 required ASB to prove they had affixed seed tags to each container as a prerequisite to recovering the amount owed on the outstanding account. As a result, we find that Jacoby's argument that section 266.051 augmented ASB's burden by requiring it to establish that the delivery of the seed was done "in *436 a customary manner" to be without merit.[10] Jacoby's first point on appeal is denied.
Jacoby's second point on appeal alleges that the trial court erred in entering judgment in favor of ASB on its action on account because there was not substantial evidence to support the trial court's finding that the price ASB charged for the seed it delivered was reasonable. At trial, ASB presented the testimony of its retail sales manager who stated that the prices charged for the seed ASB delivered were usual and customary for the industry. Jacoby brought forward no evidence to rebut the sales manager's testimony, which itself constituted substantial evidence that the charges were reasonable. See Dyna Flex Ltd. v. Charleville , 890 S.W.2d 413, 414 (Mo. App. E.D. 1995) ("The general manager of Dyna Flex testified at trial that the charges for the inlays were fair and reasonable, which constitutes substantial evidence for the trial court's judgment, particularly in light of the lack of testimony to the contrary."). On appeal, Jacoby fails to direct this Court to any evidence that counters the testimony of the ASB sales manager, or otherwise demonstrates that the price for the seed was unreasonable.[11] The trial court found the testimony of the ASB sales manager to be credible, and we defer to the trial court's determinations of credibility. See LaBarca v. LaBarca , 534 S.W.3d 329, 337 (Mo. App. W.D. 2017) (An appellate court defers to the trial court's credibility determinations, and the trial court is free to believe all, part or none of any witness's testimony.).
Moreover, Jacoby ignores the fact that he successfully negotiated a lower price for the seed than the amount listed on the original invoice. During the March 2016 meeting between Jacoby and the ASB retail sales manager, Jacoby complained that the price reflected on the invoice was one dollar higher per unit than the price quoted by ASB's sales representative. The ASB sales manager responded by agreeing to credit Jacoby the extra dollar he requested despite the sales manager's own misgivings regarding Jacoby's claim. Thus, not only did the evidence establish that the initial price ASB charged for the seed was fair and reasonable, Jacoby was able to benefit from a further price reduction obtained through negotiation. Considering the foregoing, there was substantial evidence to support the trial court's finding that the prices ASB charged for the seed *437 "were usual, customary, and, in fact, negotiated." Jacoby's second point on appeal is denied.
The third point raised by Jacoby on appeal concerns the defense of recoupment. This defense is based in equity and premised "upon the principle that it is just and equitable to settle in one action all claims growing out of the same contract or transaction." Boone Nat. Sav. & Loan Ass'n, F.A. v. Crouch , 47 S.W.3d 371, 376 n. 4 (Mo. banc 2001) (quoting Russell v. Empire Storage & Ice Co. , 332 Mo. 707, 59 S.W.2d 1061, 1066 (Mo. banc 1933) ). "The object of the plea is to rebate or recoup in whole or part the claim sued on." Id. (quoting Russell , 59 S.W.2d at 1066 ). Jacoby argues that the trial court erred in failing to give proper weight and consideration to the defense despite-as Jacoby readily admits-the fact that "it was not directly pled." This failure to plead the defense would normally be fatal to Jacoby's argument given that, as an affirmative defense, recoupment must be pleaded in order to be preserved. RPM Plumbing Mechanical, Inc. v. Jim Plunkett, Inc. , 46 S.W.3d 60, 62 (Mo. App. W.D. 2001) ; Dyna Flex Ltd. v. Charleville , 890 S.W.2d 413, 414 (Mo. App. E.D. 1995). However, several courts have also considered claims for recoupment to have been deemed pleaded under Rule 55.33(b) when evidence relevant to the claim is admitted without objection despite not having been asserted in the pleadings themselves. See RPM Plumbing Mechanical, Inc. , 46 S.W.3d at 62. ("Because [plaintiff] did not object to evidence supporting the defense and that evidence was not relevant to any other issue in the case, we deem [defendant]'s affirmative defense of recoupment to have been tried by implied consent."); Carlund Corp. v. Crown Center Redevelopment , 849 S.W.2d 647, 651 n. 3 (Mo. App. W.D. 1993) (Although [defendant] in its answer did not specifically plead 'recoupment' as an affirmative defense, its counterclaim inherently pleads the defense of recoupment."). Jacoby argues that this Court should apply the holdings of RPM Plumbing Mechanical, Inc. and Carlund Corp. and deem the defense of recoupment to have been properly injected into the case based on the evidence adduced without objection at trial. Final resolution of this preliminary issue is inconsequential, however, as a careful review of Jacoby's arguments reveal that he cannot prevail on the merits.
The underlying premise of Jacoby's claim for recoupment lies in the argument that the failure of ASB to deliver the seed with attached seed tags rendered him unable to properly manage his fields for weeds and ultimately led to a reduced crop yield. However, Jacoby's conduct following the seed deliveries undermines his claim. For example, not only did Jacoby fail to assert any complaint to ASB following the first delivery of seed that lacked attached seed tags, he proceeded to place two additional orders that were also accepted without seed tags without complaint. Further, Jacoby chose to plant all the delivered seed in addition to having his fields sprayed for weeds absent any effort to obtain the supposedly critical information contained on the seed tags. Finally, Jacoby admitted at trial that he had ordered Roundup-ready seed and had operated under the assumption that he had received Roundup-ready seed, which the evidence confirmed was the most vital information found on the seed tags and the most crucial to determining how to manage weeds.[12]
*438 In addition, ASB provided an explanation for Jacoby's reduced crop yields that was unrelated to the failure to attach seed tags. The ASB sales manager testified that the traditional planting time for soybeans runs from May through June and that planting after Mid-June would be expected to reduce yield as there would not be enough growing days left in the season to fully develop a crop. He similarly testified that harvest for soybeans usually occurs in Mid-October or early November and that a delayed harvest can also have a negative impact on yield.[13] Both of these factors would have served to depress Jacoby's yield as the evidence presented at trial demonstrated that Jacoby not only delayed planting until well into July but also failed to harvest until January and February of the following year.
Jacoby's acceptance of the seed shipments absent seed tags without complaint as well as the alternative explanation for Jacoby's low crop yields provided the necessary evidentiary basis for the trial court's finding that the seed delivered by ASB was not the proximate cause of Jacoby's underperforming crop. As such, the trial court did not err in determining Jacoby failed to establish that he was entitled to any recovery on his claim for recoupment. Jacoby's third point on appeal is therefore denied.
Jacoby's fourth point on appeal contends that the trial court's denial of his counterclaim for damages was against the weight of the evidence. Such a claim "presupposes there is sufficient evidence to support the judgment" and our review "serves only to check the trial court's potential to abuse its power in weighing the evidence." Holm v. Wells Fargo Home Mortgage, Inc. , 514 S.W.3d 590, 596 (Mo. banc 2017). As a result, we consider "such arguments cautiously and reverse[ ] only in rare instances when [we have] a firm belief the trial court's judgment is wrong." Id. This case is not one of those rare occurrences. The evidence presented by ASB at trial concerning Jacoby's actions subsequent to the seed deliveries and the alternative explanation for Jacoby's lower crop yields based on his tardiness in planting and harvesting was not outweighed by any evidence presented by Jacoby.[14] Jacoby's fourth point on appeal is therefore denied.
Jacoby's fifth and final point actually raises two separate and distinct arguments concerning the amount of damages awarded to ASB by the trial court. First, Jacoby contends that the trial court erred in its damage calculation by failing to account *439 for the credits granted by ASB during the March 2016 meeting. Second, he argues that the trial court assigned the wrong date to begin the accrual of interest. We consider each of these arguments in turn.
Jacoby raised three complaints during his meeting with ASB's retail sales manager in March of 2016 regarding the charges reflected in the original invoice. Specifically, he complained about the type and amount of fertilizer that ASB had applied to his fields, the acreage that had been sprayed for weeds, and the seed prices he had been charged compared to what he had been quoted. The ASB sales manager testified that, although he did not agree with Jacoby's assessment, he nevertheless decided to credit Jacoby's account to compensate for the difference between the amount invoiced and what Jacoby believed he owed. Those credits were recorded on an invoice, which was entered into evidence at trial, and totaled $711.60. Jacoby now contends that the trial court failed to apply this credit to the amount originally invoiced by ASB for the delivered seed. However, this argument misinterprets the evidence.
To begin with, the record shows that the disputed $711.60 in credits represents the sum of a $420.00 credit on the seed delivered and two credits totaling $291.60 for spraying services. However, Jacoby had paid the balance due on his account regarding weed spraying services prior to ASB's commencement of this action so those charges were not in dispute in this case. Further, a comparison between the invoiced price for those services and the amount Jacoby tendered in satisfaction clearly indicates the credit for weed spraying services extended by ASB had in fact been applied.[15] Thus, Jacoby's argument that the trial court erred in failing to apply the $291.60 portion of the credit to the amount he owed for the seed must fail. Not only does this credit relate to a separate service-one for which payment has already been made no less-the credit itself has already been applied. In addition, the record establishes that Jacoby received the $420.00 credit for the seed as well.[16] Therefore, Jacoby has received all of the credits extended by ASB during the March 2016 meeting. Jacoby's fifth point on appeal is thus denied to the extent it concerns this argument.
Jacoby's second argument in his fifth point contends that the trial court erred in determining that interest on the account began accruing in August of 2015. He claims that because he would not have received the first invoice showing a balance due on his account until after July 31, 2015, the calculation of interest owed should have instead begun in September of 2015. Jacoby presents this argument without *440 any support for his assertion; however, this Court notes that the original invoice supplied to Jacoby by ASB unambiguously states that payment for the seed deliveries became due on August 31, 2015. Missouri law states that that a creditor may only collect interest "on accounts after they become due and demand of payment is made." Mo. Rev. Stat. § 408.020. Therefore, interest on the account could only begin accruing at the earliest after August 31. Consequently, we will exercise our discretion pursuant to Rule 84.14 and modify the judgment of the trial court to "give such judgment as the court ought to give." See Village at Deer Creek Homeowners Ass'n, Inc. v. Mid-Continent Cas. Co. , 432 S.W.3d 231, 248-49 (Mo. App. W.D. 2014) ("Because correction of the Judgment requires a simple mathematical calculation, we exercise our discretion pursuant to Rule 84.14 to modify paragraphs 53 and 54 of the Judgment and to 'give such judgment as the court ought to give.' "); Colt Investments, L.L.C. v. Boyd , 419 S.W.3d 194, 197 (Mo. App. E.D. 2013) ("Pursuant to Missouri Supreme Court Rule 84.14, we shall give such judgment as the trial court ought to give. When the error is one of mathematical calculation only, we can amend the trial court's judgment accordingly.").
We recalculate the interest owed by Jacoby as follows: 9% on the unpaid amount of $25,845.50 from September of 2015 to March of 2016 totaling $1,356.89 and 9% on the unpaid amount of $21,420.00 from April 2016 to the date of judgment totaling $2,409.75. Therefore, we modify the total damages awarded by the trial court from $25,308.48 to $25,186.64, with post judgment interest at a rate of 9%.
Conclusion
The judgment of the trial court is modified to reflect the proper calculation of the interest accrued. In all other respects, the judgment of the trial court is affirmed.
All concur.

The record is unclear as to the exact definition of a "unit" as used to describe the quantity of seed delivered. However, as there does not appear to be any dispute regarding whether the proper quantity of seed was delivered, we will proceed on the presumption that a "unit" is an industry term and was understood by the parties.

"Treated seed" is seed that contains a fungicide or insecticide and is generally more expensive than untreated seed. It can be visibly distinguished from untreated seed owing to its unique color, though the specific color may change between seed providers. Treated seed is generally considered to have many benefits over untreated seed, but must also be used within the current planting season or is wasted.

At trial, a representative for ASB testified that it was common, if not expected, for farmers to order multiple varieties of seed. This is done because different types of seed prosper under different growing conditions and farmers do not know what weather will occur in a given year. Planting multiple varieties of seed is therefore a method used to hedge against potential losses caused by unexpected, adverse environmental factors.

All statutory citations are to the Revised Statutes of Missouri, 2000, as supplemented.

On appeal, Jacoby attempts to argue that the discrepancy between the prices charged for the seed and those quoted represented the difference between the charges for treated and untreated seed. However, this is refuted by the record. Specifically, the ASB sales representative testified that Jacoby was never charged the additional cost for treated 393 seed and the trial court found this testimony to be credible. Further, each delivery of 393 seed listed on the invoices sent to Jacoby delineated separate charges for bulk seed and for the applied treatment, and in each case the price for the treatment is listed as $0.00.

This first count was partially abandoned when Jacoby conceded during preliminary proceedings that section 266.051 did not give rise to a private cause of action and agreed that the question of seed tags could be introduced for evidentiary purposes only with regard to the remaining counts.

Jacoby does not dispute either of these findings on appeal.

The trial court originally awarded ASB $21,840.00, but this amount was reduced after Jacoby noted that the trial court had failed to include a $420.00 credit he had been granted by ASB during the March 2016 meeting.

It is well recognized under Missouri law that an action on account has three elements: (1) "defendant requested plaintiff to furnish merchandise or services," (2) "plaintiff accepted defendant's offer by furnishing such merchandise or services, and" (3) "the charges were reasonable." Home Service Oil Company v. Cecil , 513 S.W.3d 416, 420 (Mo. App. S.D. 2017) (quoting Helmtec Indus., Inc. v. Motorcycle Stuff, Inc. , 857 S.W.2d 334, 335 (Mo. App. E.D. 1993) ); see also Teasdale & Associates v. Richmond Heights Church of God in Christ , 373 S.W.3d 17, 21 (Mo. App. E.D. 2012) (stating same); Berlin v. Pickett , 221 S.W.3d 406, 411 (Mo. App. W.D. 2006) (stating same); Midwestern Health Management, Inc. v. Walker , 208 S.W.3d 295, 297 (Mo. App. W.D. 2006) (stating same).

Jacoby vehemently argues that a failure to give due weight to the seed tag requirements of section 266.051 when considering ASB's claim would render the statute moot. This is incorrect. Chapter 266 explicitly provides that it is subject to enforcement by the department of agriculture and the record in this case indicates that the department did in fact take action regarding ASB's failure to affix seed tags after Jacoby filed a formal complaint. In addition, Jacoby was allowed to raise the issue of the seed tags as part of his defense of recoupment as discussed more fully with regard to his third point on appeal.

The portion of Jacoby's brief concerning this point primarily argues that the trial court erred in faulting Jacoby for failing to reject the seed provided by ASB. While a defendant's decision to accept or reject the merchandise offered by the plaintiff in an action on account may be relevant to the first or second element, it has no bearing on the reasonableness of the prices charged for that merchandise. Consequently, this argument offers no support for the claim of error raised in his point relied on. Jacoby's contention that the trial court failed to take the absence of seed tags into account when determining the reasonableness of the charges is equally fruitless. The failure of ASB to attach seed tags may have been relevant to a defense of recoupment (as discussed more fully in the analysis of Jacoby's third point relied on) but has no effect on determining whether the price for the goods themselves, i.e. the seed ASB supplied, was reasonable.

Roundup is a herbicide marketed by the Monsanto Company that contains the chemical compound glyphosate. Monsanto Co. v. Syngenta Seeds, Inc. , 226 S.W.3d 227, 229 (Mo. App. E.D. 2007). Roundup-ready seeds are those that have been genetically altered to be resistant to glyphosate thus permitting the herbicide to be sprayed over an entire field without destroying the crop in question. Id.

Specifically, the ASB sales manager testified that when mature soybeans are exposed to rain, the bean pods shrink and swell causing them to lose some of their oil content and corresponding weight. Because yield for soybeans is determined by weight, this reduces the crop yield. Other loss factors that become more problematic the later the harvest include the soybean pods cracking open and allowing the beans to fall to the ground, ice formation, and exposure to wildlife.

The majority of Jacoby's brief regarding this point argues that the trial court's conclusion was against the weight of the evidence because it failed to make definitive findings on a number of issues. However, such assertions are inconsistent with the error Jacoby is alleging. A review to determine whether a trial court's judgment is against the weight of the evidence is based on weighing the evidence supporting the findings the trial court did make, not those it did not make. In this case, the trial court found that ASB's seed was not the proximate cause of Jacoby's damages based on Jacoby's behavior concerning the seed and his tardiness in planting and harvesting. On appeal, Jacoby fails to direct the court to any evidence directly contradicting these findings.

The evidence actually suggests that Jacoby paid even less than what he owed after application of these credits. The original invoice indicates that the charges for the weed spraying services were $3,422.70 and $1,617.40, for a total of $5040.10. With the application of the $291.60 in credits, this total should have been reduced to $4748.50. However, the check tendered by Jacoby as payment on the amount owed for fertilizer and weed spraying services was only for $4,428.50. Thus, the amount Jacoby actually paid for these services was reduced by an additional $320.00. This Court need not concern itself with this apparent error, however, as the check Jacoby tendered was accepted by ASB as payment in full for the fertilizer and weed spraying services. Moreover, such an error would be by definition harmless as it inures to Jacoby's benefit. See Morse v. Johnson , 594 S.W.2d 610, 615 (Mo. banc 1980) (Any error in computation of damages was harmless where such error inured to appellant's benefit.).

In fact, the trial court amended its judgment at Jacoby's request solely for the purpose of incorporating this credit.